EDWARDS, EXR., APPELLEE, *v.* BRETHREN CHURCH; PRICE, APPELLANT; ET AL.

(No. 3145—Decided July 3, 1967.)

*Mr. John F. Edwards,* for appellee.
*Messrs. Oldham & Oldham, Messrs. Hamrick, LeCrone & Parks* and *Mr. Richard A. Molique,* for appellant.

KERNS, J.   Daniel Kimmel died testate on June 1, 1963, survived by his widow, M. Berdella Kimmel, and a niece, Catherine Price, the appellant herein.   On June 19, 1963, his will was admitted to probate and John F. Edwards, appellee herein, was appointed executor of the estate.

Mr. Kimmel's will after directing the payment of just debts and funeral expenses provided as follows:

"ITEM II:   I give, devise and bequeath unto my be-

loved wife, M. Berdella Kimmel, for and during her natural life, my residence property and all land in connection therewith of approximately eight (8) acres on which my said residence is located at 747 Miller Avenue, Madison Township, Montgomery County, Ohio, my said wife is to have the use of the income therefrom and so much of the principal as may be necessary for her support and maintenance so long as she shall live, hereby granting unto her the right to use her own discretion and judgment in determining the amount so needed for her support and maintenance.

"I further give, devise and bequeath to my said wife, M. Berdella Kimmel, for and during her natural life, my one-half (½) interest in approximately 8.22 acres of unimproved land adjoining my residence property as above described; giving and granting unto her the right to use all of the income from the same during her natural life and so much of the principal as may be necessary for her support and maintenance as in her sole judgment may be required and needed.

"I further give and grant unto my said wife, M. Berdella Kimmel, for and during her natural life, my 130 acre farm, more or less, located on North Lutheran Church Road, Madison Township, Montgomery County, Ohio, subject to my contract to sell the same to Carl Smith and Betty Smith, his wife, hereby giving and granting my said wife, the right to use the income from said farm or from said contract, whether principal or interest, so long as she shall live, and I hereby give and grant unto her full power and authority to use whatever principal of the same, within her sole discretion that may be required for her support and maintenance; it being my intention to give to my said wife all of my real estate that I may own at the time of my death, for and during her natural life, with power to consume the same.

"I give and grant unto my said wife, M. Berdella Kimmel, the right, power and authority to sell or mortgage all or any part of my said real estate above mentioned, at any

time during her life, at such prices and upon such terms of credit as she may deem best, with power and authority to execute and deliver deeds, mortgages, and other instruments of conveyances therefor, without obtaining authority from the Probate Court, and the purchaser or purchasers shall take all the right, title and interest in said land or lands that she is capable of conveying.

"Upon the death of my said wife, M. Berdella Kimmel, any or all real estate remaining unconsumed by her during her life time, I give, devise and bequeath to my niece, Catherine Marcile Price of Logansport, Indiana, the same to belong to her absolutely and in fee simple and I further give unto her the unconsumed portion of the unpaid balance, if any, due or to become due by reason of any of said real estate having been sold on contract, and direct that said real estate shall be taken subject to the terms and conditions of any contract or contracts for the sale of the same."

Items three through nine provide for $30,000 in general pecuniary legacies to be divided among six churches and charitable organizations and a demonstrative legacy in the amount of $500 to Ashland College. Item ten then provided as follows:

"ITEM X: If my estate shall prove insufficient to pay all the legacies and bequests given by this Will, then it is my direction that all property bequeathed and devised to my wife, M. Berdella Kimmel, shall first be paid in full and that the other legacies shall abate proportionately."

The inventory and appraisement on file shows approximately $1,200 in cash and other intangible securities; the balance due on the land contract in the amount of $35,000; and the real estate referred to in the will, which is valued at $19,500.

In addition to the amount set forth in the inventory, the decedent had survivorship bank accounts and government bonds in conjunction with his wife, which total approximately $58,000. The parties to this action agree that the survivorship property is not subject to the will of the

decedent, but it is significant perhaps that the attorney who drafted Mr. Kimmel's will testified that he was of the opinion at the time of the execution of the will that this property was owned by the decedent alone. In any event, it is obvious that the estate of the testator is insufficient to pay all of the pecuniary legacies.

Hence, the executor sought a construction of the will in the Probate Court of Montgomery County with particular emphasis upon the effect of Item X thereof upon the devise and bequest of the remainder interest in the real estate and land contract. M. Berdella Kimmel, the wife of the testator, died on December 14, 1964.

After construing Item X of the will, the trial court concluded "that the remainderman's interest in the land contract and real estate must be valued at the date of the life tenant's death and must be added to the total pecuniary and demonstrative legacies, and that each gift provided in said will must then be related on a percentage basis and paid from the net distributable estate and so distributed; that the interest of the remainderman is not preferred over the other beneficiaries."

In the present appeal, the appellant challenges the construction placed on the will by the trial court and submits the following question for determination:

"Is appellant's remainder interest in the real estate and/or land contract included in the word 'legacies' in Item X of testator's will so as to be charged with the payment of the general or pecuniary legacies?"

The law favors the vesting of estates at the earliest possible moment, and it is well settled in Ohio that a remainder after a life estate vests in the remainderman at the death of the testator. *Ohio Natl. Bank* v. *Boone,* 139 Ohio St. 361. And the character of a remainder as vested is not affected by an uncertainty as to the quantum of interest which will be received by the remainderman when he becomes entitled to possession. *Tax Commission* v. *Oswald,* 109 Ohio St. 36.

Hence, the specific devise and bequest of the remaind-

er interest in the real estate and the proceeds from the land contract became vested in the appellant, Catherine Price, upon the death of the testator subject only to being divested by M. Berdella Kimmel's power to consume for her support and maintenance. See 20 Ohio Jurisprudence 2d 387, Section 144.

It thus appearing that the appellant was possessed of a vested rather than a contingent remainder upon the death of the testator, we reach the question of abatement.

In this regard, it should be noted that the devises and bequests made in Item II of the testator's will are specific (56 Ohio Jurisprudence 2d 291, Section 780) whereas the pecuniary legacies provided for in Items III through VIII of the will are general (56 Ohio Jurisprudence 2d 293, Section 783). A general legatee cannot require contribution from specific devisees and legatees to equalize a loss arising from an insufficiency of funds to pay debts and legacies. *Glass* v. *Dunn,* 17 Ohio St. 413. See, also, *In re Estate of Dickey,* 87 Ohio App. 255. In other words, a specific devise or bequest will not abate for the benefit of a general legacy. See Section 2107.54, Revised Code; 56 Ohio Jurisprudence 2d 412, Section 884 *et seq.*

Hence, under general rules of law, the appellant's interest could not be committed to the payment of general legacies. And a testator's intention to depart from the usual order of abatement must clearly appear from the will and surrounding circumstances. 6 Page on Wills 205, Section 53.3.

The testator's only reference to abatement is contained in Item X of his will, and after giving the charitable and religious bequests every reasonable consideration, we are still unable to find any language in this provision which might be construed to show an intention upon the part of the testator to depart from the testamentary plan outlined for his wife and niece in Item II of the will.

On the contrary, the testator emphasizes therein that all property bequeathed and devised to his wife "shall first be paid in full." In order to honor this provision, it was

necessary that the property mentioned in Item II be so distributed that the wife could use all or any part of it during her lifetime. The will spoke as of the death of the testator (*Ohio Natl. Bank* v. *Boone*, 139 Ohio St. 361) and, obviously, the life estate with the power to consume could not be "paid in full" if the property mentioned in Item II was used at that time to satisfy general legacies.

The mere fact that the life tenant in the present case died only eighteen months after the testator is not significant in determining the intention of the testator because he had no knowledge of this fact when he drafted his will.

In reaching its conclusion, the trial court was apparently of the opinion that the remainderman's interest was contingent upon the termination of the life estate and that abatement should await the death of the life tenant. We are unable to find any support for this conclusion from either the law or the will.

The testator's wife and niece were the natural objects of his bounty, and we find nothing in Item X which either restricts or qualifies the specific estates provided for them in Item II of the will.

Abatement necessarily involves disappointment. And it is particularly unfortunate when it extinguishes bequests to charitable and religious organizations. However, abatement alone furnishes no reasonable basis for a retrospective realignment of the testator's entire will.

The judgment must be reversed, and the cause remanded to the trial court for further proceedings in accordance herewith.

*Judgment reversed.*

CRAWFORD, P. J., and SHERER, J., concur.